FILED

2007 NOV 19 P 1: 33

U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2241
## BY A PERSON IN FEDERAL CUSTODY

Agnes Kole, ç18423-050
_____, Petitioner,
Full Name and Prisoner Number

FCI Danbury
_____
Complete Prison Address (Place of Confinement)
33 and 1/2 Pembroke Station
Danbury, CT 06811
_____

_____

Case No. 3:07 CV 1711 (JCH)
(To be supplied
by the Court)

v.

Harley Lappin, Director U.S. Bureau of Prisons
D. Scott Doddrill, Direction, Northeast REgion, Bureau of Prisons
_____, Respondent,
(Name of Warden, Superintendent or
authorized person having custody of petitioner)
(Do not use *et al.*)
Donna Zickefoose, Warden FCI Danbury
Felipe Rodriguez, Jr., Associate Warden, FCI Danbury, and
Anne Marie Raftery, Supervisory Chaplain, Religious Services Dept.
_____, Additional Respondent.    FCI Danbury
(List additional persons having custody
of petitioner, if any)

## CONVICTION UNDER ATTACK

1) Name and location of the court which entered the judgment of conviction under attack _not applicable; instant petition only challenges terms and conditions of incarceration._

2) Date judgment of conviction was entered     n/a

3) Case number _n/a_

4) Type and length of sentence imposed _n/a_

5) Are you presently serving a sentence imposed for a conviction other than the conviction under attack in this motion?  Yes ___     No ___   n/a

6) Nature of the offense involved (all counts) _n/a_

7) What was your plea? (check one)   n/a
Not Guilty ___   Guilty ___   Nolo Contendere ___

8) If you entered a guilty plea to one count or indictment, and a **** guilty plea to another court or indictment, give details:

9) If you entered a plea of guilty pursuant to a plea bargain, state the terms and conditions of the agreement _____

10) Kind of trial (check one)   Jury ___ Judge only ___   n/a

11) Did you testify at trial? Yes ___ No ___   n/a

**DIRECT APPEAL** not applicable; see above

12) Did you appeal from the judgment of conviction?     Yes ___ No ___

13) If you did appeal, give the name and location of the court where the appeal was filed, the result, the case number and date of the court's decision (or attach a copy of

the court's opinion or order): _____

_____

_____

_____

14)    If you did not appeal, explain briefly why you did not: _____

_____

_____

a)    Did you seek permission to file a late appeal?  Yes __ No __

## POST-CONVICTION PROCEEDINGS

15)    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?      Yes __ No __   not applicable because instant petition
                                                                                                       pertains only to term and condition of
16)    If your answer to 15 was "Yes," give the following information:      incarceration

    a)    FIRST petition, application or motion.

        1.    Name of court _____

        2.    Nature of proceeding _____

               _____

        3.    Claims raised _____

               _____

        4.    Did you receive an evidentiary hearing on your petition, application or motion?  Yes __ No __

        5.    Result _____

        6.    Date of result _____

        7.    Did you appeal the result to the federal appellate court having

jurisdiction? Yes __ No __   If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order)

_____

_____

8.   If you did not appeal, briefly explain why you did not   _____

_____

_____

b) As to any SECOND petition, application or motion, give the following information:

1.   Name of court _____

2.   Nature of proceeding _____

_____

3.   Claims raised _____

_____

4.   Did you receive an evidentiary hearing on your petition, application or motion? Yes __ No __

5.   Result _____

6.   Date of result _____

7.   Did you appeal the result to the federal appellate court having jurisdiction? Yes __ No __   If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order) ___

_____

_____

_____

8.   If you did not appeal, briefly explain why you did not _____

c) As to any THIRD petition, application or motion, give the following information:

    1.    Name of court _____

    2.    Nature of proceeding _____

    _____

    3.    Claims raised _____

    _____

    4.    Did you receive an evidentiary hearing on your petition, application or motion? Yes __ No __

    5.    Result _____

    6.    Date of result _____

    7.    Did you appeal the result to the federal appellate court having jurisdiction? Yes __ No __   If you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order) ____

    _____

    _____

    8.    If you did not appeal, briefly explain why you did not _____

    _____

# CLAIMS

17) State concisely every claim that you are being held unlawfully.  Summarize briefly the facts supporting each claim.  If necessary, you may attach extra pages stating additional claims and supporting facts.  You should raise in this petition all claims for relief which relate to the conviction under attack.

In order to proceed in federal court, you ordinarily must exhaust the administrative remedies available to you as to each claim on which you request action by the federal court.

**Claim One**: My First Amendment constitutional rights are being violated by FCI Danbury's refusal (as upheld by BoP authorities) to continue to provide me and other Jewish inmates Kosher for Passover supplementary food items that will allow us to maintain complete Kosher for Passover standards during the Passover season.

(1) Supporting Facts: (Without citing legal authorities or argument state briefly the facts supporting this claim) See attached memo.  In brief, FCI Danbury staff, as upheld by BoP authorities, unlawfully limited and then discontinued the availability of special purchase Kosher for Passover food iems for myself (a Jewish inmate) and other Jewish inmates.  These items were previously available to us to supplement our diet during Passover consistent with Kashruth rules.

(2) Did you seek administrative relief as to claim one? Yes XX No ___. If your answer is "Yes," describe the procedure followed and the result. If your answer is "No," explain why you did not seek administrative relief: Informal grievance 2/14/06, BP-9 denied 3/28/07, BP-10 denied 5/11/07, BP-11 denied 8/10/07

**Claim Two**: I and other Jewish inmates at FCI Danbury are being denied our equal protection rights under the 14th Amendment because other religions at FCI Danbury are accommodated by commissary holiday items while we Jewish inmates are not.

(1) Supporting Facts: (Without citing legal authorities or argument state briefly the facts in support of this claim) See attached memo.  Briefly, FCI Danbury, with the approval of BoP officials, limited then denied to Jewish inmates the availability of special purchase Kosher for Passover food items.  Comparable holiday food items are made available for the Christian and Muslim inmate population.

(2) Did you seek administrative relief as to claim one? Yes __XX__ No __. If your answer is "Yes," describe the procedure followed and the result.  If your answer is "No," explain why you did not seek administrative relief: _see dates listed on page 6._

Claim Three: _My First, Fifth and Fourteenth Amendment rights were_ violated when FCI Danbury, with the approval of BoP officials, terminated the special purchase order Kosher for Passover food item purchase program because I have filed an administrative grievance challenging a prior limitation on that program.

(1) Supporting Facts: (Without citing legal authorities or argument state briefly the facts in support of this claim) See attached memo.  Briefly, FCI DAnbury, with approval of BoP officials, terminated a longstanding special purchase order program for Jewish inmates, enabling us to obtain supplementary Kosher for Passover food items during Passover, because I filed previously an administrative grievance challenging an initial limitation on that program.

(2) Did you seek administrative relief as to claim one? Yes XX  No ___. If your answer is "Yes," describe the procedure followed and the result.  If your answer is "No," explain why you did not seek administrative relief: see dates listed at page 6.

18)  Do you have any petition, application, motion or appeal now pending in any court, either state or federal, regarding the conviction under attack? Yes ___ No XX  If "Yes," state the name of the court, case file number (if known), and the nature of the proceeding:_____

19)  State briefly why you believe that the remedy provided by 28 U.S.C. § 2255 (Motion to Vacate Sentence) is inadequate or ineffective to test the legality of your detention: 2255 not applicable to terms and conditions of confinement.

Wherefore, petitioner prays that the court grant him such relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

_____

_____

_____
Attorney's Full Address and
Telephone Number

_____
Petitioner's Original Signature

_18423-050_____
Petitioner's Inmate Number

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the petitioner in this action, that he/she has read this petition and that the information contained in the petition is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at _Danbury, CT_ on _10-16-07_
            (Location)              (Date)

_____
Petitioner's Original Signature

## MEMORANDUM OF LAW
## IN SUPPORT OF SEC. 2241 PETITION

AGNES KOLE, by herself, submits the following Memorandum of Law in Support of her Sec. 2241 Petition, alleging various constitutional violations by FCI Danbury and other Bureau of Prisons staff regarding the availability of Kosher for Passover food items:

1.                         STATEMENT OF FACTS

    For many years, the Bureau of Prisons (BoP) has provided at most of its facilities nationwide during the Jewish Passover season a procedure for Jewish inmates to obtain a series of Kosher for Passover food items.  Items that are Kosher for Passover meet a stricter standard than Kosher items available year-round; they do not have any leaven or other ingredient that will enhance ego. Because of this stricter standard, food items normally available to observing Jewish inmates are not available during Passover. Therefore, alternative food items that meet the stricter Kosher for Passover standard are made available to Jewish inmates via a Special Purchase Order (SPO) program through the Inmate Trust Fund ("Commissary").  Commissary, in turn, obtains the items in bulk order from the Aleph Institute, a national prison ministry organization for Jewish prisoners.

    By BoP national policy, each inmate's commissary purchases are limited to $290 monthly (excluding postage).  During the Christian holiday season (end of November to end of December), the monthly spending limit for inmates is increased by $50 to $340, to allow extra purchases; a special list of holiday items is made available to the inmates.  A typical such list is attached.  Regular commissary stock includes several Kosher items that meet non-Passover standard; they are available year-round (also attached).

Religious personal property items are available to all inmates
by SPO generally. BoP Program Statement 5360.09 regulates this pro-
cess. It defines inmate religious property, at para. 14, as inclu-
ding but not limited to "rosaries and prayer beads, oils, prayer
rugs, phylacteries, medicine pouches and religious medallions."
It further states that "all personal religious property will
be purchased either from commissary stock or through an approved
catalogue source using the SPO process. No religious item may
have a monetary value greater than $100." (emphasis added). The
SPO process by which Jewish inmates typically order Kosher for
Passover food items consists of a list of 12 items from which
we place an order. Sample copies of that list are attached.
We also receive, during the 8 days of Passover, a Kosher for Pass-
over meal and the elements required to complete Seder (Seder meals,
Seder plate, Matzoh and copy of the Haggadah). There are available
to us at the main dining hall.

As the Passover 2007 season began, the Supervisor of the
FCI Danbury Religious Services Department gave the Jewish inmates (I am one)
the Kosher for Passover food SPO order form. For the first time,
that form stated that the order total could not exceed $100, and
that the food items had to be consumed by April 30, 2007. It
was signed by Chaplain Anne Marie Raftery (Supervisor of Religous
Services) and Associate Warden Rebecca Clay.

I grieved these two new limits, using the BoP administrative
remedy process. I filed an informal grievance on 2/18/07. The
staff reply stated that the mandatory religious requirements for
Passover are only Seder meals, Seder plate, matzohs and Kosher
for Passover dining hall meals for the 8 days of Passover, and

a copy of the Haggadeh.  The additional Kosher for Passover food items offered by the Aleph Institute were discretionary only and subject to the $100 per item religious property limit.  I filed a BP-9 on 3/3/04, claiming that, under Program Statement 5360.09, the $100 limit applies to each item, not the aggregate of multiple items, that the new $100 and "consume by" limits were unlawful First Amendment restraints not reasonably related to any valid penalogical interest, and that the limits discriminated against Jewish inmates.

FCI Warden Donna Zickefoose answered my BP-9 on 3/28/07. She granted my request to delete the "consume by" limit.  As to the $100 limit, she stated:

> Special Purchase Order items are not a religious requirement for Passover observance.  Therefore, your Kosher food items will no longer be a Special Purchase Order.  They may be purchased through the institution's commissary where regular spending limits and time limits will apply.

On 4/10/07, I filed a BP-10 with the Northeast Regional Office of teh BoP in Philadelphia, PA, appealing the Warden's statement that the SPO Kosher for Passover food items are not a religious require-ment for Passover.  On 5/11/07, D. Scott Doddrill, Northeast Region-al Director, denied my appeal, stating that "all food and other items necessary to celebrate Passover were provided to you by the BoP" and that the Warden properly exercised her discretion "in deciding to offer such items through commissary."

On 6/5/07, I filed a BP-11 appealing the Region's denial and noting in particular that the Danbury commissary <u>does</u> <u>not</u> <u>offer</u> Kosher for Passover food items as part of its regular stock.  On 8/10/07, Harrell Watts, Administrator of National Inmate Appeals, stated that the Region was correct that the mandatory Passover items were provided,

memo
page four

and that "the religious diet program provides Kosher for Passover
food (apparently referring to the dining hall "common fare" meals).
That denial further stated "we find that the Warden was correct in
noting SPO items are not required for Passover."

On 9/9/07, I sent an Inmate Request to Staff to Warden Zickefoose,
asking if the FCI Danbury commissary will provide the same selection
of Kosher for Passover items (either by direct commissary purchase
or by SPO) that other BoP institutions answer.  I received no answer.
On 10/8/07, I sent another Inmate Request to Staff to Associate Warden
Felipe Rodriguez, Jr., asking to clarify the Warden's original BP-9 answer
as to whether the same Aleph Institute Kosher for Passover food items
would now be available to us by direct commissary purchase, subject
to the $290 monthly limit.  I did not receive any reply to that request,
either.  BoP Program Statement "Inmate Requests to Staff" requires such
requests to be answered within 3 days. All the above are attached.

2.
                              ARGUMENT

I.  My First Amendment constitutional rights are being violated by
    FCI Danbury's refusal (as upheld by BoP authorities) to continue
    to provide me and other Jewish inmates with the Kosher for Passover
    food selections that were previously made available to us.

    In CRuz v. Beto, 405 U.S. 315 (1972), the Supreme Court made clear
that prisoners do not lose their First Amendment rights to religious
expression because they are incarcerated.  When the government seeks to
limit a prisoner's First Amendment religious expression, the limitation
must be "no greater than is necessary" to protect a rational government
interest.  A prison regulation that affects inmates' constitutional
rights is "valid if it is reasonably related to legitimate penological
interests."  Turner v. Safley, 482 U.S. 78, 89 (1987).  See also
O'Lone v. Shabazz, 482 U.S. 342, 349 (1987).

The Second Circuit has scrupulously held that prison authorities must accommodate the right of prisoners to receive a diet consistent with their religious beliefs. In <u>Kahane v. Carlson</u>, 527 F.2d 492 (1975), the Second Circuit held that an orthodox Jewish inmate was entitled to a mandamus order requiring the Bureau of Prisons to provide him with a kosher diet:

> The evidence in this case justifies the court's finding of the deep religious significance to a prac- tising orthodox Jew (which this prisoner concededly is) of the laws of Kashruth. The dietary laws are an impor- tant, integral part of the covenant between the Jewish people and the God of Israel.

Id., 527 F.2d at 495.

The Second Circuit's holding in <u>Kahane</u> survives the Supreme Court's adoption of the rationally related test in <u>O'Lone/Turner</u>. See <u>Bass v. Coughlin</u>, 800 F. Supp 1066, 1071 (N.D.N.Y. 1991)(collecting cases), aff'd 976 F.2d 98 (1992). Thus, there is a clearly established First Amendment right to receive food consistent with one's religious dictates. See <u>Kajid v. Wilhelm</u>, 110 F.Supp.2d 251, 258 (S.D.N.Y. 2000).

Further, it is not necessary to show that a religious practice is mandatory in order to render it constitutionally protected. In <u>McEachin v. McGuynnis</u>, 357 F.3d 197 (2d Cir. 2004), the SEcond Circuit reversed a district court's sua sponte dismissal of a Muslim inmate's claim that his 7 day diet while in a disciplinary unit unconstitutionally deprived him of Halal meals during RAmaden. The prison contended that such meals were not mandatory and that therefore no constitutional violation occurred. The Second Circuit rejected that argument, stating that "our founding principles require that courts resist the dangerous temptation to try to judge the significance of particular devotional

obligations to an observant practitioner of faith."  Id., 357 F.3d
at 201.

> It is not within the judicial ken to question
> the centrality of particular beliefs or practices
> to a faith, or the validity of particular litigants'
> interpretations of those creeds.

Ibid, quoting <u>Hernandez v. Comm'r</u>, 490 U.S. 680, 699 (1989).  The
Second Circuit then reviewed Third Circuit case law (requiring only
a determination that a belief is sincerely held, and religous in
nature), and District of Columbia (same, and whether the practice
is a central tenant or important practice supported in the religion).
The Court specifically held that a dietary practice need not be manda-
tory to entitle it to constitutional protection.  Id., 357 F.3d at
203, and cases cited at n. 7.  See also <u>Ford v. McGinnis</u>, 352 F.3d
582 (2d Cir. 2003), where the SEcond Circuit reversed a district
court dismissal of a pro se Muslim prisoner's 1983 claim alleging
an unlawful denial of an Eid ul Fitr feast.  There, the district
court had found the burden on religous exercise de minimus because the
feast had been moved to a date where prison officials asserted it had
lost its objective religious significance.  In reversing, the Second
Circuit applied a subjective test: "An individual claiming violation
of free exercise rights need only demonstrate that the beliefs professed
are 'sincerely held' and, in the individual's own scheme of things,
religious."  Id., 352 F.3d at 588 (citation omitted).  Relying on
<u>Jackson v. Mann</u>, 196 F.3d 316 (2d Cir. 1999), the Court also rejected
the claim that the position of prison religious authorities by itself
could objectively establish whether an asserted religious belief was
entitled to protection.  In <u>Jackson,</u> the Second Circuit had rejected
prison authorities' claims that the staff Rabbi's determination that a
Jewish inmate was not in fact a Jew under Judaic law privileged

memo
page seven

its denial of Jewish religious practices to that inmate.

Finally, the Second Circuit also rejected the notion that the fact that a practice may not be mandatory renders any limit on that practice de minimus. Id., 352 F.3d at 594

The District Court for Connecticut - a court describing itself as 'especially solicitous' of the religious rights of prisoners[1] has acknowledged that "different levels of observance exist among the world's Jews." Moskowitz v. Wilkinson, 432 F.Supp. at 949. In that case, the fact that some Jewish men did not object to shaving did not render the petitioner's objection to shaving any less a religous practice: "He need not show that is religious practice is absolutely mandated in order to receive constitutional protection." Ibid. Rather, "the showing of a belief or practice deeply rooted in religious doctrine is suffcient to trigger the government's obligation under the Constitution to justify its restriction as reasonably necessary in support of an important or substantial interest." Id., 432 F.Supp. at 949-50.

Applying these principles, FCI Danbury's cessation of the SPO Kosher for Pasover food program, and its refusal to make the same items available to the Jewish inmates by commissary direct purchase, constitute an unlawful abridgement of our First Amendemtn rights. FCI Danbury, and the affirming Bureau of Prisons authorities, claim that the religious requirements for Passover are only Seder meals, plate, Matzoh and Kosher for Passover meals at the dining hall for the 8 Passover days, and the Haggedah. However, Kosher observance of Passover is based on the consumption of foods that do not have any leaven or other ingredient that

---

1/ See, e.g., Williams v. Warden, FCI Danbury, 470 F.Supp. 1123, 1125 (1979)(opening and stamping religous mail unreasonable restriction) and Moskowitz v. Wilkinson, 432 F.Supp. 947, 949 (1977)(FCI Danbury restriction on beards violated orthodox Jews First Amendment rights).

will enhance ego. For this reason, under the laws of Kashruth, Kosher standards are much more rigid and strict for Passover observance than for the rest of the calendar year. The few kosher items available on the direct commissary list year-round do not meet this standard. Our food sources during the Passover season are therefore much more limited. For this reason, the Aleph Institute has developed this program, to allow the Jewish inmates during Passover some minimal, alternative food sources that meet this stricter, Kosher for Passover standard.

Whether this stricter Kosher for Passover observance is followed by all Jews or not is irrelevant. It is established beyond dispute in the Second Circuit and particularly in the District of Connecticut that a religous practice need not be mandatory to be afforded constitutional protection. McEachim, Ford and Moskowitz, supra. I and other Jewish inmates at FCI Danbury have utilized the Aleph Institute SPO Kosher for Passover food purchase program for years to allow us to maintain the stricter, Kosher for Passover observance for all our food consumption during the Passover season. It is a religous practice entitled to constitutional protection.

Second, there is no substantial or legitimate government interest at stake in cessation of this program. The prison has not asserted such an interest, nor would it be able to. For many years, FCI Danbury Jewish inmates were routinely able to purchase Kosher for Passover food items with an aggregate value over $100. Jewish inmates at other prisons continue to be able to do so. No harm to the security of the institution ever occured or was alleged because of these purchases. No disciplinary sanction ever resulted from these purchases. There is no economic burden on the institution from these purchases; the bulk orders are placed directly with the Aleph Insitute. It is available at other

prisons nationwide; it appears that FCI Danbury is the only prison to impose this limitation, and now to terminate the program.

Based on the above, FCI Danbury, with the approval of the named BoP officials, has violated my First Amendment rights and those of the other Jewish inmates at Danbury, by terminating and failing to provide any substitute for the Kosher for Passover food purchase program.

II.   I and other Jewish inmates at FCI Danbury are being denied our equal protection rights because FCI Danbury provides Christian and other inmates special holiday commissary items but not the Jewish inmates.

An equal protection violation is shown when prisoners of one religious persuasion receive preferential treatment over prisoners of another religious persuasion and there is no countervailing government interest.  In Cruz v. Beto, supra, a Buddhist inmate had alleged First and Fourteenth Amendment violations because Buddhist inmates were not allowed to use the prison chapel, and where free religious material and chaplain services were provided only to Christian inmates.  The Supreme Court reversed the district court dismissal, stating that if the petitioner inmate "was denied a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts, then there was palpable discrimination by the state...."  405 U.S. at 322.  See also Moorish Science Temple of America v. Smith, 693 F.2d 987, 990 (2d Cir. 1982) (claim that Muslim inmates did not receive alternative diets consistent with their religious beliefs, where such alternatives were available to the Jewish inmates, raised valid equal protection and First Amendment claims).

The commissary at FCI Danbury provides at the Christmas season a wide variety of holiday food items.  In addition, the commissary increases the monthly spending limit by $50 (from $290 to $340) to accommodate Christian holiday purchases.  In contrast, the FCI Danbury staff has just terminated the only program by which Jewish inmates were able to obtain Kosher for Passover food items.  NOt only is Passover our equivalent holiday celebration, but in the Passover season consumption of Kosher for Passover food items also has deep religious significance for Jewish inmates observing Kashruth.  This disparate treatment is not justified by any institutional interest, as noted above.  FCI Danbury offerred the Kosher for Passover SPO program for many years without any adverse administrative or security impact.  On these facts, this disparate treatment violates the equal protection rights of the Jewish inmates at FCI Danbury.


III.  My First, Fifth and Fourteenth Amendment rights were violated when FCI Danbury (with the approval of BoP officials) discontinued a Special Purchase Program to purchase Kosher for Passover food items only because I filed a grievance challenging a new $100 limit on such SPO Kosher for Passover purchases.

A valid due process/chilling restraint claim of unlawful retaliation is established where an individual engaged in constitutionally protected conduct and retaliation was a substantial or motivating factor in the challenged conduct.  <u>Blue v. Koren</u>, 72 F.3d 1075 (2d Cir. 1995) at 1082, citing <u>Mount Health Schl. Dist. v. Doyle</u>, 429 U.S. 274, 287 (1977).  The right of access to government to seek redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights."  <u>Franco v. Kelly</u>, 854 F.2d 584, 589 (2d Cir. 1988), quoting <u>United Mine Workers v. Illinois State Bar</u>, 339 U.S. 217, 222 (1967).  This right of access includes access to both administrative and juddicial

forums.  Ibid.

Resort to prison administrative grievance procedures is included in this constitutional right of access.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).  A plaintiff alleging unlawful retaliation must show a causal connection between the constitutionally protected conduct and the alleged retaliatory adverse action.  Daws v. Walker, 239 F.3d 489, 492 (2d Cir. 2001).  Temporal proximity of the alleged retaliation to the exercise of protected conduct is a factor that can establish a causal connection.  Rivera v. Goord, 119 F.Supp.2d 327, 339 (S.D.N.Y. 2000); Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000).

In my case, I filed a BoP adminitrative grievance initially to protest the imposition of the $100 limit on the Kosher for Passover SPO purchases and the "consume by" limit.  Until I filed that grievance, there had been no question regarding continuing the SPO Kosher for Passover food purchase program.  FCI Danbury officials had never asserted any problem regarding administration of this Aleph Institute-sponsored program.  The Warden did not assert any penological interest or issue in her answer to my BP-9, where she decided to terminate the SPO program. Nor did any other BoP official in upholding her decision.  FCI Danbury staff has not made available any substitute program via commissary direct purchase.  Because termination of the SPO program was in direct response to my constitutionally protected act of filing a BoP grievance, it is an unlawful act of retaliation that independently violates my constitutional rights.

Summary

FCI Danbury named officials, and named BoP officials affirming their acts, have violated my constitutional rights by denying me and other Jewish inmates at FCI Danbury the ability to obtain Kosher for Passover

alternative food sources, via SPO program or by any direct commissary purchase.  These same officials have also violated my constitutional rights by terminating this program in retaliation for my utilization of BoP administrative remedy procedures.

3.  I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


_____ · 10-16-04
Agnes Kole                    date

**F.C.I/F.P.C. DANBURY Commissary List:** Revised: October 1, 2007 *(N = New Item)*
*PRICES ARE SUBJECT TO CHANGE WITHOUT NOTICE*

Name: _____ Register # _____ Unit # _____ Shopping# _____

*Stamps:* ___ .02   ___ .41   ___ .41 Book (8.20)   ___ .60   ___ .63   ___ 1.00  ( Limit 24.60 )

Photo Tickets ( limit 4 )= _____   ITEM SUBSTITUTION= _____   (please initial) _____   Debit Card (max $30.00)= _____

## CLOTHING

**BRIEFS**
- ___ Panties 5-6-7-8  7.05*
- ___ Panties 9- 13  9.65*
- ___ Mark Size

**CAP/HAT**
- ___ Knit Hat  5.20*
- ___ Baseball Cap  3.60*

**GLOVES**
- ___ Isotoner Gloves  5.60*
- ___ Grey Wool  3.65*

**OUTERWEAR/Polar Fleece**
- ___ M-L-XL  22.10
- ___ 2X-3X  26.00
- ___ 4X-5X  28.60
- ___ Mark Size
- ___ Polar Scarf  5.85*
- ___ Poncho  3.65*

**PAJAMAS**
- ___ S-XL  20.80*
- ___ 2X-6X  26.00*
- ___ Mark Sizes

**ROBES**
- ___ Robe/All in One 35.10*
- ___ Jumbo  32.50*

**T-SHIRTS/Short**
- ___ L - 3X  6.50*
- ___ 4X - 6X  9.10*
- ___ 7X  13.00*
- ___ Mark Size

**T-SHIRTS/Long**
- ___ Sm - 4X  10.40*
- ___ Mark Size

**SHOES**
- ___ Black Boot  65.00*
- ___ Boat Shoes  58.50*
- ___ Boot Laces  1.05
- ___ Mark Size

**SHOES/ATHLETIC**
- ___ New Balance  57.20*
- ___ Keds Canvas  23.70*
- ___ Mark Size
- ___ Wh.Shoes Laces  0.85
- ___ White Polish  3.40*

**SHOES-SHOWER/SLIPPER**
- ___ S-2XL  4.45*
- ___ S-XL Terry  3.90*
- ___ Flip/Flop  0.95*

**SHORTS**
- ___ S - 2XL  14.30*
- ___ 3X -6X  18.85*
- ___ Mark Size

**SOCKS**
- ___ 3pk. Ankle  4.35*
- ___ Gold Toes(ea)  2.60 - N*

**SWEATS**
- Pants S-M-L-XL-2X-3X-4X
- ___ Mark Size  15.60
- Shirts S-M-L-XL-2X-3X-4X
- ___ Mark Size  15..60
- ___ Larger Sizes  SPO

**THERMAL'S**
- Pants
- ___ Sm-2XL  6.50*
- ___ 3X - 6X  10.40*
- ___ Mark Size

---

Shirt
- ___ L - 2XL  5.60*
- ___ 3X - 6X  10.40*
- ___ Mark Size

## DRINKS

**COFFEE**
- ___ Folger Decafe  7.15*
- ___ Taster Choice  4.10*
- ___ Creamer  1.65*
- ___ Columbian  2.85*
- ___ French Van.Cap. 1.50*

**HEALTH DRINKS**
- ___ Water  0.60*
- ___ Goya  0.95*
- ___ Crystal Peach  0.45*
- ___ Crystal Banana  0.45- N*
- ___ V-8 Splash  1.70*
- ___ Grape Juice  0.75*
- ___ Cran Juice  0.75*
- ___ Soy Milk  4.00 - N*

**HOT CHOCOLATE**
- ___ S/F Hot Cocoa  1.70*
- ___ Hot Cocoa  1.45*

**MIXES**
- ___ Instant Milk  3.85*
- ___ Tea/w lemon  2.50*
- ___ Tang  1.90*
- ___ Kool Aid Punch  1.85*
- ___ Peach  1.70*
- ___ Country Berry  1.80*

**SOFT DRNKS**
- ___ Pepsi  3.05*
- ___ Diet Pepsi  3.05*
- ___ Sierra Mist12/pk 6.05*
- ___ Gnger Ale12/pk 6.05*

**TEA**
- ___ Nestea Bags  4.20*
- ___ Assort.Herbal  2.50*

## FOODS

**CANDY**
- ___ Cream Savers  2.35*
- ___ Twizzlers  1.00*
- ___ M&M Peanuts  3.25*
- ___ Snickers Bag  4.35*
- ___ S/F Wild Fruit  0.65*
- ___ Vanilla Carmels 0.60*
- ___ Now or Later  0.70*
- ___ Jolly Rancher  1.45*
- ___ Peppermints  0.95*
- ___ Butterscotch  1.00*
- ___ Jellybeans  1.05*
- ___ Fireballs  0.60*
- ___ Baby Ruth Bag  4.20 - N*
- ___ Mounds Bag  4.30 - N*

**CHIPS**
- ___ Corn Tortilla  0.95*
- ___ Potato Chips  1.05 - N*
- ___ Crunch/Munch  1.45*
- ___ Pork Rinds  0.90*
- ___ Ripple Chips  1.05 - N*
- ___ Tortillas Chips  2.45*
- ___ Nacho Tortilla  1.15*
- ___ Micro Popcorn  1.90*
- ___ Flour Tortilla  1.05*
- ___ Barbeque Chips  1.05*

---

**CONDIMENTS**
- ___ Real Lemon  0.65*
- ___ Ketchup  1.45*
- ___ Whipped Butter 2.45*
- ___ Mayonnaise  2.80*
- ___ Olive Oil  5.20*
- ___ Mustard  1.10- N*

**COOKIES**
- ___ Oatmeal  1.45*
- ___ Oreos  1.95*
- ___ Duplex  0.85*
- ___ Vanilla Wafers  1.80*
- ___ Chocolate Chip  0.95*

**CRACKERS**
- ___ Ritz Cracker  1.45*
- ___ Goya  1.85*
- ___ Premium Saltine 2.90*
- ___ Wheat Thins  3.25*
- ___ Iced Anml Crkr  1.15*

**DAIRY**
- ___ Kraft Velveta  2.20
- ___ Squeeze M&Z  2.35
- ___ Sharp Cheese  2.95
- ___ Grated Cheese  3.50 - N

**FISH**
- ___ Tuna  1.15*
- ___ Mackerel  1.30*
- ___ Smoked Clams  2.35*
- ___ Fish Steaks/Hot 0.85*

**FROZEN (ice cream)**
- ___ Sandwich  0.65
- ___ Vanilla  1.55
- ___ Chocolate  1.55
- ___ Peanut Butter  1.55
- ___ Strawberry  1.55
- ___ Butter Pecan  1.55
- ___ Drumstick  1.90 - N

**HEALTH FOODS**
- ___ Oat.Frt-Crm  3.35
- ___ Granola Bars  3.15
- ___ Rice Cakes  3.00
- ___ NutriGrain Bars 0.55
- ___ Unsalted Zesta  2.30
- ___ Party Mix  2.05
- ___ Quaker Grits  3.55 - N
- ___ Dried Mango  2.20 - N
- ___ Dried Banana  2.00 - N
- ___ Dried Pineapple 2.20 - N

**KOSHER/HALAL MEALS**
- ___ Chicken/Nood.  2.89 (K)
- ___ Beef Stew  2.94 (K)
- ___ Pasta/Veg.  2.43 (K/H)
- ___ Veg, Stew  3.23 (H)
- ___ Chez Tortoreli  2.70 (K/H)
- ___ Flort. Lasagna  3.66 (H)
- ___ Matzo Crackers  2.81
- ___ Figs  2.69
- ___ Dates  2.19

**MEATS**
- ___ Beef Deli Stick  0.85*
- ___ Summer Sausage1.65*
- ___ Pepperoni  1.85*
- ___ Spam Singles  1.45*
- ___ Chicken  3.35*
- ___ Roast Beef/Gry  2.75*

---

**NUTS**
- ___ Tropical Blend  1.00
- ___ Honey Roasted  0.65
- ___ Mixed Nuts  2.85

**PASTA**
- ___ Mac&Cheeze  0.95

**PASTRY**
- ___ Strawberry Tart  1.75
- ___ Honey Bun  0.70

**PRODUCE/PRESERVED**
- ___ Refried Pinto  1.55
- ___ Jalapeno Wheel  1.90
- ___ Sweet Corn  1.25
- ___ Black Beans  1.25 - N
- ___ Kaiser Pickle  0.70 - N

**RICE**
- ___ Oriental  0.50*
- ___ Spanish W/Chees 0.50*
- ___ Long Grain  1.10*
- ___ Brown Rice  1.30*

**SNACK**
- ___ Vanilla Pudding  1.80
- ___ Peanut Butter  3.00
- ___ Grape Jelly  2.10
- ___ Strawberry Jelly 2.35

**SOUP/STEW**
- ___ Vegetable Cup  0.55*
- ___ Chicken Soup  0.25*
- ___ Beef  Soup  0.25*
- ___ Chili Soup  0.30- N*
- ___ Chicken & Stars 1.98 *
- ___ Chili w/Beans  1.45*
- ___ Thia Rice  0.50*

**SPICES**
- ___ Mrs. Dash  2.90*
- ___ Sazon  1.30*
- ___ Goya Adobo  1.19*
- ___ Garlic Powder  1.30*
- ___ Salt & Pepper  1.30*
- ___ Onion Powder  1.10*
- ___ Hot Sauce  1.40*
- ___ Soy Sauce  1.00*
- ___ X Hot Sauce  1.90*

**SWEETENER**
- ___ Splenda  7.75 - N*
- ___ Sugar Twin  1.65*
- ___ Honey  2.50
- ___ Sugar Canister  1.75*

## HEALTH/HYGIENE

**CONDITIONERS**
- ___ Hot Six Oil  5.80*
- ___ 3 Min.Miracle  5.25*
- ___ Braid Spray  2.90*
- ___ Dreed Lock  5.45*
- ___ Comb/Pomade  3.00*
- ___ Pro- Hair Food  2.55*
- ___ Coconut Oil  2.30*
- ___ Botanical Relax  6.00*
- ___ Optimum  4.75*
- ___ Lotta Body  3.95*
- ___ Lekair Choles  2.80*
- ___ Suave  1.75*
- ___ Pantene  5.65*
- ___ Nourisher  3.65*
- ___ Weightless  3.65*
- ___ Infus 23.  7.30*
- ___ Afr/ Pride Cond  8.25*

ON this $340 Limits on it

# 2006 HOLIDAY COMMISSARY LIST
## 11/20/06 - 12/22/06

NUMBER:_____  NAME:_____  UNIT:_____

## FOOD ITEMS

| | | |
|---|---|---|
| ___ | CHICKEN IN THE SEA SHRIMP | 3.25 |
| ___ | CHICKEN IN THE SEA OYSTERS | 2.15 |
| ___ | La CENA GUAVA PASTE | 0.95 |
| ___ | CRAB MEAT | 1.29* |

### GENERAL FOODS INTERNATIONAL COFFEE

| | | |
|---|---|---|
| ___ | FRENCH VANILLA | 5.40 |
| ___ | HAZELNUT | 5.40 |
| ___ | WOODS SMOKED TURKEY SAUSAGE | 2.35 |

## SNACKS

| | | |
|---|---|---|
| ___ | YOGURT PRETZELS | 2.05 |
| ___ | PISTACHIOS | 3.10 |
| ___ | CREAM CHEESE SPREAD | 0.40 |

## MISCELLANEOUS

| | | |
|---|---|---|
| WHITE LONG SLEEVE T-SHIRTS __SM __M __L __XL __2X __3X __4X | | 10.40 |
| ___ | GREY WOOL GLOVES (one size fits all) | 3.65 |
| ___ | ST. IVES BODY WASH FRESH H2O SCENT | 3.25 |
| ___ | SPA ESSENTIALS NYLON BATH NET (sponge) | 2.90 |

GREETING CARDS, 6 PACK        3.15

____ #1        ____ #2        ____ #3        ____ #4

**ALL SALES ARE FINAL!
CHECK YOUR ORDER BEFORE
LEAVING.**

**ALL ITEMS SOLD ON AN *"AS IS"*
BASIS,
WITH NO WARRANTY IMPLIED.**

**NO REFUNDS OR EXCHANGES**

********************************
**A LIMIT ON A PARTICULAR
ITEM(S),  MAY BE IMPOSED TO
ALLOW FAIR & EQUAL
OPPORTUNITY**
********************************
**PRICES ARE SUBJECT TO
CHANGE WITHOUT NOTICE.**

05-0107

# FCI DANBURY
## RELIGIOUS SERVICES DEPARTMENT
## INMATE PASSOVER PURCHASE FORM

**PRINT NAME:** AGNES KOLE

**REGISTRATION #** 18423050

**SIGNATURE :** _____          **Unit:** 1A

| Quantity | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| ✓ 2 | MATZAH (1 lb. box)     (Not more than 8 boxes.) | $ 1.50 | 3.00 |
| | SHMURAH MATZAH (Special handmade) 1 lb. box | $ 8.00 | |
| 7 | GRAPE JUICE  (*NEW!* 8X 6.75 oz. *Paper Juice Boxes!*) | $ 5.00 | 35.00 |
| ✓ 2 | HORSERADISH (9 grams packets) 25 packets | $ 1.50 | 3.00 |
| ✓ 5 | Chicken W/ Potatoes (Rexon Plastic) | $ 3.00 | 15.00 |
| ✓ 10 | Smoked Salmon 8oz.  pouch | $ 5.00 | 50.00 |
| ✓ 4 | GEFILTE FISH  (*Special for SPOs Small Pop Open Cans!*) | $ 1.00 | 4.00 |
| ✓ 10 | PACKAGED SOUP (Package of 3 cubes) | $ 0.50 | 5.00 |
| ✓ 18 | MACAROONS (10 oz tin) | $ 1.75 | 35.50 |
| ✓ | Chocolate :  Bittersweet 3oz. 5    Milk 3oz. 8 | $ 1.00 | 13.00 |
| | | Total: | 159.50 |

**Deadline:**   Turn into Chapel no later than March 14, 2005.  Thank you.

**Important:**   All items must be consumed by May 1, 05,  end of Passover.

___ **Approved:** _Anne Marie Raftery_          **Passover, 2005**
Chaplain Anne Marie Raftery

# FCI DANBURY
# RELIGIOUS SERVICES DEPARTMENT
# INMATE PASSOVER PURCHASE FORM

**PRINT NAME:** _____

**REGISTRATION #**_____

**SIGNATURE :** _____          **Unit:**_____

| Quantity | DESCRIPTION : Kosher For Passover<br>Choose from the following: | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | One Box of Matzahs is supplied to each person for the eight days of Passover. | | |
| | SHMURAH MATZAH (Special handmade) 1 lb. box | $ 8.00 | |
| | GRAPE JUICE : 4X 6.75 oz. *Paper Juice Boxes*).<br>Shelf Stable Cheese Snacks 3 oz. | $ 2.50<br>$ 1.50 | |
| | HORSERADISH - White Sauce Spread<br>Shelf-Stable Salmon Filet - 3oz. Pouch<br>Shelf Stable Chicken w/Matzah Ball soup (12oz)<br>Shelf Stable Chicken W/Potatoes (Plastic) | $ 1.50<br>$ 2.00<br>$ 2.50<br>$ 2.50 | |
| | Shelf Stable Beef Goulash and Veg. (Plastic)<br>Shelf Stable Gefilte Fish (12 Oz. Plastic) | $2.50<br>$2.50 | |
| | SOUP Bouillon Cubes | $ 0.50 | |
| | MACAROONS (10 oz tin)<br>Chocolate :  Bittersweet ___          Milk ___ | $ 1.75<br>$ 1.25 | |
| | Haggadahs | $ 1.00 | |
| | Total: | | |

**Please Note:**    * Turn into Chapel no later than February 16, 2007.
    * All items must be consumed by April 30, 2007
    * Your Special Purchase Order May Not Exceed $100.00

___ Approved:   _Anne Marie Raftery,_
Anne Marie Raftery,
Supervisory Chaplain

___Approved:   _____
B. Clay, A.W. (R)



C.F.R. 1330.13D
08/03/00
Page 4

Attachment 1

ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
INFORMAL RESOLUTION FORM

<u>NOTICE TO INMATE</u>: You are advised that prior to receiving and filing a Request for Administrative Remedy Form, you <u>MUST</u> attempt to informally resolve the complaint through your Correctional Counselor. Briefly state complaint below and list what efforts you have made to resolve your complaint informally. Also, please state names of staff contacted.

Date Informal Resolution Form Issued by Correctional Counselor: X _02/14/06 SRM_

INMATE'S NAME: _Agnes Kole_    NUMBER: _X18423-050_    QUARTERS: X _1-A_

1. Complaint: _There is no BOP policy that states a limit on SPO's on religious Passover items. Therefore there is no Policy saying that a Jewish inmate can not spend the $290 limit on Passover items. What is the difference between X-mas and Passover items? Passover items can be consumed See Attachment -_

2. Efforts made to informally resolve: _Spoke with two staff members about this situation_

Names of Staff contacted: _Chaplin KO, A/W ms. Clay_

Inmate's Signature: _Agnes Kole_    Inmate's Number X _18423-050_

CORRECTIONAL COUNSELOR'S COMMENTS:

1. Date Returned to Correctional Counselor: _2/18/07_

2. Efforts made to informally resolve: _See attached Reply_

3. Names of Staff contacted: _Chaplain Rafferty_

Date Informally Resolved: _____    Signature: _____

Or    (Counselor)

Date Issued: _02/18/07_

Distribution:  I.    If complaint is informally resolved, forward original to Warden (Attention: EXECUTIVE ASSISTANT)

II.    If complaint is NOT informally resolved, forward original attached to Administrative Remedy Form to Warden (Attention: EXECUTIVE ASSISTANT)

Attachment 1

Year-round, like Christmas items. Their $100 limit on Passover SPO is arbitrary. Policy says inmates can spend $290, including Passover items. The $100 limit should be removed from the sheet. This is another form of discrimination, of Sister Raftery against the Jewish religion in FCI-Danbury.

Thank You,
Agnes Kate

The religious requirements for Passover are:
Seder meals,
Ceremonial Seder Plate,
Matzohs and Kosher for Passover meals for the eight days of Passover
Copy of the Haggadah

The additional Passover snacks in question are offered by the ALEPH Institute, as part of its prison outreach ministry, for Jewish inmates only during the eight days of Passover.
FCI Danbury is graciously permitting this special offer to the Jewish inmates through the SPO process for the eight day of Passover only.
Other religious items offered to inmates in general have the $100.00 limit according to policy, PS. 5360.09 #14,(a).   All religious items, religious food items included, come under this Bureau of Prison policy, PS. 5360.09 #14 (a).

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

SRM    03 04 07   Rcvd

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From:  KOLE  Agne~          18423-050    1/A West    FCI DANBURY
       **LAST NAME, FIRST, MIDDLE INITIAL**    **REG. NO.**    **UNIT**    **INSTITUTION**

**Part A– INMATE REQUEST**

I am requesting permission to purchase for the immediate 2007
Passover season now ongoing more than $100 worth of the SPO
Kosher for Passover religious food items.  I also am requesting
permission to keep those items for the duration fo their normal
shelf life.  Religious Services Dept. has limited us to purchase
of under $100 and requires us to consume them within a few weeks.
For the reasons set forth in the attached Statement of Rationale,
I believe both those restrictions are unlawful.  I request their
immediate rescission.

_____        _____
**DATE**                **SIGNATURE OF REQUESTER**

**Part B– RESPONSE**

_____        _____
**DATE**                **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**THIRD COPY: RETURN TO INMATE**          CASE NUMBER: _____

**Part C– RECEIPT**                          CASE NUMBER: _____

Return to: _____
           **LAST NAME, FIRST, MIDDLE INITIAL**    **REG. NO.**    **UNIT**    **INSTITUTION**

SUBJECT: _____

_____        _____
**DATE**                **RECIPIENT'S SIGNATURE (STAFF MEMBER)**

BP-229(13)

## STATEMENT OF RATIONALE

The newly imposed $100 limit on Jewish inmates' SPO purchase of Kosher For Passover food items, and the requirement that these items be consumed within several weeks, are unlawful for the following reasons:

**1. The $100 limit and "consume by" requirement conflicts with BoP policy on SPO religious purchases.**

In the Feb. 18, 2007 information resolution of this issue, Religious Services Dept. asserts that "other religious items offered to inmates in general have the $100 limit according to policy, PS 5360.09 #14(a)" and that therefore this new limit is authorized.

This is not an accurate statement. The $100 limit referred to in PS 5360.09 refers to various <u>items</u> of personal religious property that an inmate may obtain and keep in their possession. The FCI Danbury Institution Supplement on Religious Activities sets forth examples of religious items, including medallions, prayer beads, prayer books, specified headwear. The BoP Program Statement clearly states that "no religious item may have a monetary value greater than $100."

Here, the $100 limit applies to each item purchased, not to the aggregate, overall value of each distinct item. Thus, the FCI Danbury Institution Supplement states, for example, that "approved religious medallions...may be worn only if...they have a retail value of $100 or less." These religious items are further considered authorized inmate property that an inmate may lawfully possess indefinitely; no time limit is placed on the right to possess the items.

The Kosher For Passover SPO program lists 12 distinct items from which a Jewish inmate may order. The items are separate and may be ordered individually. None of the items exceed $100 in value. Merriam Webster's Collegiate Dictionary (10th ed.) defines the word "item" as "a distinct part in an enumeration, account or series." The BoP Program Statement states that a religious item may not exceed $100 in value, and none of these food items do. But the Program Statement does not state that the aggregate value of any and all personal religious items held by an inmate may not exceed $100. This is, in effect, the interpretation of the Program Statement being put forward by the Religious Services Dept., and it is an unreasonable one, directly contrary to the plain meaning of the rule.

By the same token, nowhere does the Program Statement state that religious items may only be held for a limited period of time. Thus, the restriction that the Kosher For Passover religious food items be consumed by April 30, 2007 is also not supported by the BoP Program Statement or any FCI Danbury insitution supplement.

**2. The $100 purchase limit and "consume by" restriction are First Amendment restraints not reasonably related to any penalogical interest.**

FCI Danbury is located within the jurisdiction of the U.S. District Court of Connecticut. This court has acknowledged on

multiple occasions that it is "especially solicitous" of the religious rights of prisoners. See, e.g., Williams v. Warden FCI Danbury, 470 F.Supp. 1123, 1125 (D.Conn. 1979)(opening and stamping religious mail was unreasonable restriction); Moskowitz v. Wilkinson, 432 F.Supp. 947, 949 (D.Conn. 1977)(FCI Danbury restriction on beards violated orthodox Jew's 1st Amendment rights) These Kosher For Passover restrictions are not valid under these and other cases.

In Cruz v. Beto, 405 U.S. 319 (1972), the Supreme Court made clear that prisoners do not lose their First Amendment rights to religious expression because they are incarcerated. When the government seeks to limit a prisoner's First Amendment religous expression, the limitation must be "no greater than is necessary" to protect the government interest.

First, the use of Kosher For Passover food items is clearly a religious expression. In the informal resolution of my complaint Religious Services Dept. asserts that the religious requirements for Passover are only Seder meals, plate, Matzah and kosher meals for 8 days and the Haggedah. However, Kosher observance of Pass- over is based on the consumption of foods that do not have any leaven or other ingredient that will enhance ego. For this reason, Kosher standards are much more rigid and strict for Passover obser- vance. Compliance with Kosher during this period means that food items normally available to us aren't. Our food sources are much more limited. For this reason, the ALePH Institute has developed this program, to allow us some, minimal alternative food sources that meet this stricter, Kosher For Passover standard.

Whether this stricter Kosher for Passover observance is fol- lowed by all Jews or not is irrelevant: The District Court for Connecticut has acknowledged that "different levels of observance exist among the world's Jews." Moskowitz v. Wilkinson, 432 F.Supp. at 949. In that case, the fact that some Jewish men did not object to shaving did not mean that the petitioner's objection was any less a religious practice: "He need not show that his religious practices is absolutely mandated in order to receive constitutional protection." Ibid. Rather, "the showing of a belief or practice deeply rooted in religious doctrine is sufficient to trigger the government's obligation under the Constitution to justify its restriction as reasonably necessary in support of an important or substantial interest." Id., 432 F.Supp. at 949-50.

Second, no such substantial or important government interest is at stake here. For many years, Jewish inmates were routinely able to purchase Kosher For Passover food items with a total aggre- gate value over $100. No harm to the security of the institution ever occurred, or was alleged, because of our purchases. No disci- plinary sanction resulted from these purchases. There is no econo- mic burden on the institution from these purchases. Indeed, when I asked Mr. Schoonmacher and Ms. Lockhart (Commissary supervisor and busines office rep, respectively), about any limit on SPO Kosher For Passover purchases, I was told the only limit was the normal, monthly commissary limit of $290.

Nor is there any government interest at stake in the "consume by" requirement. These food items have a normal shelf life as

statement of rationale
page three

do any others.  We should be allowed to hold and consume these
items in accord with their commercial shelf life.

3.  **The $100 limit and "consume by" restriction on Kosher For
Passover purchases unlawfully discriminates against Jewish
inmates.**

It is well-established that the Bureau of Prisons cannot
discriminate amongst various religions.  See <u>Cruz v. Beto</u>, supra.

Christian religions are afforded a wide variety of holiday
food items to celebrate the Christmas season.  See attached holiday
list.  Not only is there no comparable $100 limit, in fact, the
overall monthly commissary spending limit is <u>increased</u> by $50
to accommodate these holiday food and other purchases.  Also,
none of these Christian, holiday food items have a special "consume
by" requirement outside of their normal shelf life.

There is no valid basis for the BoP to distinguish between
religious food items available to Christians for the Christmas
holidays and the religious food items available to Jewish inmates
for the Passover holiday.  The $100 limit and "consume by" restric-
tion unlawfully discriminates against Jewish inmates.


Conclusion

Substantial questions exist regarding the lawfulness of both
the new $100 limit on Kosher For Passover food item limit and
the "consume by" restriction.  These restrictions are not valid
under the protective standards of the District of Connecticut.
Certainly until the BoP Central Office of Counsel is able to
review these constitutional issues, these two restrictions should
be lifted immediately, including for the immediate 2007 Passover
season.

**ADMINISTRATIVE REMEDY**
**KOLE, Agnes**
**Register Number 18423-050**

**PART B - RESPONSE (444699-F1)**

This is in response to your administrative remedy in which you request that the Special Purchase Order spending limit for religious food purchases for Passover, be changed from $100.00 to $290.00, which is the monthly spending limit for nonreligious commissary purchases. You further request that the time limit for consumption of Special Purchase Order food items be changed from one month to the shelf-life expiration date.

My research reveals that your Special Purchase Order for Kosher food items is in the amount of $99.75. In light of your current large purchase, the time limit for consuming these food items will be the duration of the shelf-life of the items. Special Purchase Order items are not a religious requirement for Passover observance. Therefore, your Kosher food items will no longer be a Special Purchase Order. They may be purchased through the institution's commissary where regular spending limits and time limits will apply.

Accordingly, your request for administrative remedy is partially granted.

If you are dissatisfied with this response, you may appeal to the Regional Director at Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 7th Floor, 2nd and Chestnut Streets, Philadelphia, Pennsylvania, 19106. Your appeal must be received by the Regional Office within 20 calendar days of the date of this response.

_____                    _____3/28/07_____
Donna Zickefoose, Warden                             Date

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: KOLE          AGNES                    18888-050
                                             18423-050              A-1          FCI DANBURY
      LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.              UNIT         INSTITUTION

**Part A—REASON FOR APPEAL**    I am appealing the Part B-Response (444699-F1).
As stated in Part B-Response (444699-F1), that special purchase
order items are not a religious requirement for Passover
Observance signed by Donna Zickefoose Warden, and dated 3/28/07.
February 1, 2007, (Thursday) Chaplin Anne Marie Raftery,
Supervisory Chaplin of FCI Danbury, came into the Jewish
Community group meeting (which is every Thursday 8:30 a.m. to
9:30 a.m. leaving the hand-out order forms for the Jewish Inmate
Passover purchase forms for the Jewish Community.  **Only** the
Jewish Inmates are **allowed** to order from these forms and in
Observance for the Jewish Passover. These food items that
represent the religion for the Jewish Community and that are
**only** allowed to be purchased by the Jewish Inmates are only purched once a
year, for Passover and can only be purchased through the Chapel/Chaplin.
Federal Correctional Institution of Danbury, Conneticut is located within
the jurisdiction of the United States District Court of Connecticut.  This
court has acknowledge on several occasions that it is especially solicitous
of the religious rights of prisoners.

4-16-07
DATE                                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

---

DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

REGIONAL DIRECTOR

**SECOND COPY: RETURN TO INMATE**                    CASE NUMBER: 444699-R1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

BP-230(13)

See, e.g. **Williams v. Warden, FCI Danbury, 470 F. Supp. 1123, 1125, (D. Conn. 1979).** (opening and stamping religious mail was unreasonable restriction.

These Kosher for Passover restrictions are not valid under these and other cases.  FCI Warden Zickefoose, also stated "special purchase order items are not a religious requirement for Passover Observance", special purchase order items may not be considered a religious requirement for non-Jews, however, special purchase order items for Passover are indeed very important as a religious requirement for Jewish Observance of the Jewish population. The use of Kosher for Passover are only seder meals, plate, Matzah and kosher meals for 8 days and the Uaggedah.  However, Kosher Observance of Passover is based on the consumption of foods that do not have any leaven or there ingredients that will enhance ego.  For this reason, Kosher standards are much more rigid and strict for Passover Observance.  Compliance with Kosher during this period means that food items normally available to the Jewish community is not.  Our food sources are much more limited.  The Aleph Institution has developed this program, to allow the Jewish community some minimal alternative food sources that meet this stricter, kosher for Passover standard.  Everything that is allowed for purchase through FCI Danbury Institution including SPO's for pens, scarfs, or prayer beads is automatically taken from the regular spending limits with institution time limits except postal stamps.  As special purchase orders for religious foods is included in the regular spending limits, none of these Kosher for Passover items is currently sold through commissary, nor will they be sold at the current price. SPO's orders are encouraged by the BOP and approved.

_4-10-07_
Date

_____
Name

KOLE, Agnes
Reg. No. 18423-050
Appeal No. 444699-R1
Page One

---

### Part B - Response

In your appeal, you state that FCI Danbury should permit you to
use the Special Purchase Order (SPO) to supplement your religious
observance of Passover.  You claim that purchase of religious
foods should not count towards your commissary purchasing limits.
You imply your religious rights are being impeded and request an
increase in the spending limit through SPOs for Passover.

A review of your appeal reveals that all the food and other items
required to celebrate Passover were provided to you by the Bureau
of Prisons.  Each meal was certified Kosher for Passover and the
Seders included the elements to complete the required rituals.
The Warden has discretion to religiously acceptable food either
through the SPO procedure or through commissary.  We find the
Warden properly exercised her discretion in deciding to offer
such items through commissary.  Accordingly your appeal is
denied.

If you are dissatisfied with this response, you may appeal to the
General Counsel, Federal Bureau of Prisons.  Your appeal must be
received in the Administrative Remedy Section, Office of General
Counsel, Federal Bureau of Prisons, 320 First Street, N.W.,
Washington, D.C. 20534, within 30 calendar days of the date of
this response.

Date: May 11, 2007                    D. SCOTT DODRILL
                                      Regional Director

U.S. Department of Justice

Central Office Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: **KOLE,    AGNES**                    18423-050           1-A          **FCI-Danbury**
       LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.          UNIT            INSTITUTION

**Part A - REASON FOR APPEAL**  In response to my BP-10 you stated that the Warden Donna Zickefoose, exercised her discretion in deciding that instead of the Jewish Inmates ordering our Kosher for Passover (food products) through SPO from ALEPH we would now purchase through the commissary. What everyone fails to realize is that commissary sells no Kosher for Passover products at all.  The SPO purchases are therefore still our only way to get Kosher for Passover food items.  Taking our SPO from ALEPH was a way of retaliation because I simply wanted to be able to spend my entire spending limit of $290.00 on the SPO instead of the $100.00 dollars limit that Chaplin Lafferty put on and I wrote that up. Even if commissary begins to stock and sell Kosher for Passover items, will they be the same items at the same price that we were receiving from ALEPH.  All I want is to be able to have the SPO orders from ALEPH back or still be able to purchase these products and to be able to spend the $290.00 spending limit that the BOP gives us monthly.  We were granted to spend our $290.00 spending limit, we were granted to keep our food items for the duration of the shelf life.  Our problem now is our ability to order through SPO for our Kosher for Passover

6-5-2007
     DATE                                                   SIGNATURE OF REQUESTER

**Part B - RESPONSE**

# RECEIVED

### JUN 1 1 2007

Administrative Remedy Section
Federal Bureau of Prisons

_____
     DATE
ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL
CASE NUMBER: __444699-A__

**Part C - RECEIPT**                                                CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.          UNIT        INSTITUTION

SUBJECT: _____

_____                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL
     DATE                                                                    BP-23
                                                                            JUNE

items through ALEPH were taken away from us.  As it stands now, we have nothing to spend our $290.00 increase limit on.


It is well-established that the Bureau of Prisons cannot discriminate amongst various religions.  See **Cruz v. Beto, 405 U.S. 319 (1972)** the Supreme Court made clear that prisoners do not lose their First Amendment rights to religious expression because they are incarcerated.  When the government seeks to limit a prisoner's First Amendment religious expressions, the limitation must be "no greater than necessary" to protect the government interest.

The use of Kosher For Passover food items is clearly a religious expression, and whether this stricter Kosher for Passover observance is followed by all Jews or not is irrelevant. The District Court for Connecticut has acknowledged that "different levels of observance exist among the world's Jews." As **Moskowitz v. Wilinson, 432F. Supp. at 949.** the fact that some Jewish men did not object to shaving did not mean that the Petitioner's objection was any less a religious practice.  "He need not show that his religious practices is absolutely mandated in order to receive constitutional protection.  Ibid. Rather, " showing of belief or practice deeply rooted in religious doctrine is sufficent to trigger the government's obligation under the Constitution to justify its restriction as reasonably necessary in support of an important or substantial interest". **Id., 432F. Supp. at 940-50.**

------------------------------------------------------

June 5, 2007

**Administrative Remedy No. 444699-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal in which you contend your rights to observe your religious
beliefs are impeded by the Warden's restrictions on Special
Purchase Orders for Passover items.  Specifically, you object to
being able to apply your entire monthly spending limit to
purchasing Kosher for Passover items, but the commissary does not
stock such items and you are not permitted to use Special
Purchase Order (SPO) procedures.  You request to be permitted to
purchase the items you require through using the SPO process.

The Jewish diet is closely regulated by the Torah.  Jewish
inmates wishing to observe their religious dietary laws are
eligible for the religiously certified food component of the
Alternative Diet Program.  The Regional Director was correct in
stating the required items for celebrating Passover were provided
by the institution, and each meal was certified Kosher-for-
Passover.  As noted in Institution Supplement 5360.09B, Religious
Beliefs and Practices, approved inmates are provided food for the
eight days of Passover that meets Kosher-for-Passover standards.
It is noted Jewish inmates participating in the religious diet
program are provided Kosher-for-Passover food which corresponds
to the religious diet menu.  Inmates wishing to participate in
the Passover celebration must advise staff in advance of the
celebration so appropriate accommodations can be prepared.  We
find the Warden was correct in noting SPO items are not required
for observing Passover.

We have reviewed the merits of your appeal, and found the Warden
and Regional Director adequately responded to the issues you
raised in your appeal.  We find the accommodations made for you
to observe your religious beliefs are reasonable and within the
requirement of Program Statement 5360.09, Religious Beliefs and
Practices.  Accordingly, this response is for informational
purposes only.


August 10, 2007
Date

Harrell Watts, Administrator
National Inmate Appeals

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Donna Zickefoose, Warden | DATE: September 9,2007 |
|---|---|
| FROM: Agnes Kole | REGISTER NO.: 18423-050 |
| WORK ASSIGNMENT: Unicor | UNIT: 1A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

Dear Ms. Zickefoose,

I would like to establish if this institution will receive
precisely the same selection of items for Passover as all other
federal institutions in the country, whether through special
order or commissary purchase.

Please, peruse attachment for the complete selection offered
at all other federal prisons.

                    Thank you.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94


Printed on Recycled Paper

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| A/W Rodriguez | October 8, 2007 |
| FROM: Agnes Kole | REGISTER NO.: 18423-050 |
| WORK ASSIGNMENT: UNICOR | UNIT: 1A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.) I would like to clarify and confirm a BP-9 response I received from
Warden Zickefoose on March 28, 2007 (attached). In that BP-9, I was grieving
the newly imposed $100 limit on our SPO Kosher for Passover orders. In response
Warden Zickefoose stated that these items "will no longer be a Special Purchase
order [but instead] may be purchased through the institution's commissary where
regular spending limits...will apply." I simply want to confirm that, during
the upcoming and all future Passover seasons, the Jewish inmates will be able to
purchase directly off of commissary the same list of Kosher for Passover items
we previously obtained by SPO. That list is attached. It has been developed
by the Aleph Institution to include alternative food sources that meet the
stricter, Kosher for Passover standards. We previously obtained all these items
via SPO. The Warden tells us that we now should purchase them directly, during
the Passover season, from regular commissary sales. I simply want to confirm
that the **same** Aleph list of Kosher for Passover items will be available to the
Jewish inmates via direct commissary purchase during Passover.

Thank you for your prompt attention to my inquiry.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

