UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AGNES KOLE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1711 (JCH) |
| | : | |
| HARLEY LAPPIN, ET AL, | : | |
| | : | |
| Defendants. | : | APRIL 16, 2008 |

**BENCH TRIAL RULING**

## I.    INTRODUCTION

Agnes Kole filed her "Petition for Habeas Corpus" on November 19, 2007,

alleging violation of her First, Fifth, and Fourteenth Amendment rights by defendants

Harry Lappin, Director of United States Bureau of Prisons; Scott Doddrill, Director of the

Bureau of Prisons for the Northeast Region; Donna Zickefoose, Warden at the Federal

Correction Institution at Danbury ("FCI Danbury");  Felipe Rodriguez, Associate Warden

at FCI Danbury; and Sister Anne Marie Raftery, Supervisory Chaplain at FCI Danbury

(collectively "defendants").  See Application for Writ of Habeas Corpus (Doc. No. 1).

Kole's allegations stem from a reduction in the number of kosher-for-Passover food

items available to inmates for purchase for the 2008 Passover holiday.  Id.

## II.    FINDINGS OF FACT

Kole began her incarceration at FCI Danbury in 1996.  Of approximately 1200

inmates currently at FCI Danbury (the "prison"), about 16 identify as Jewish and at least

7 of those keep a kosher diet, including Kole.  Those inmates at FCI Danbury who keep

kosher are fed every day a different meal than the regular prison population.  The

kosher meal is served to these inmates on a tray wrapped in foil; the inmate unwraps

the foil and hands it back to the server to guarantee that the food has not been tainted. Inmates keeping kosher are limited to the food that is supplied on this tray, whereas inmates eating the non-kosher food supplied by the prison may request second helpings.

During the Jewish holiday of Passover, the prison makes special accommodations for inmates following the special restrictions required to keep kosher for Passover, which include abstaining from all leavened products. The prison supplies inmates keeping kosher for Passover with a Seder, the religious feast that begins the holiday, each of the first two nights of Passover. The prison also provides these inmates a copy of the Haggadah, which is the story of Passover read during the Seders, kosher-for-Passover meals at meal time, and a box of matzoh each of the eight days of Passover. The prison also reserves special tables for these inmates, on which the table cloth is replaced daily to ensure it is not contaminated with non-kosher-for-Passover food.

Inmates at FCI Danbury generally supplement their normal prison diets with food from the Commissary, which they order from the Commissary list. This list contains several hundred items, which include clothing and hygiene products in addition to food and drink. The food on the Commissary list includes meat and other high-protein foods including soups, stews, and cheese. It also includes a section for "kosher/halal meals," which includes kosher and halal-approved, pre-made meals such as beef stew or cheese tortellini. Nothing on the Commissary list is kosher for Passover.

Prior to Passover, Jewish inmates are given a kosher-for-Passover Commissary List (the "Passover list"). Jewish inmates have access to these items one week prior to

2

the beginning of Passover.  Once Passover has begun, any remaining inventory of items on the list are offered to the general prison population.

Prior to 2007, inmates at FCI Danbury ordered kosher-for-Passover foods by way of a "Special Purchase Order" made to the Aleph Institute, which supplies kosher-for-Passover foods to prisons across the country.  At FCI Danbury, Sister Raftery took the list of items offered by Aleph and created her own form on which inmates could order kosher-for-Passover foods.  Inmates could spend up to their monthly spending limit of $290 on these items, but were required to consume them within one month. The Aleph list contains 14 items, including matzah, grape juice, macaroons, horseradish, and a number of "shelf-stable" foods including salmon, bouillon cubes, cheese snacks, chicken and matzah ball soup, chicken with potatoes, beef goulash with vegetables, and gefilte fish.  The 2007 Passover list created by Sister Raftery included essentially everything on the Aleph list.  Kole would purchase some of everything on the list, spending about $160 on the items.  The average Jewish inmate at FCI Danbury bought around $50 worth of items from the Passover list.

In 2005, Kole was found to be in possession of kosher-for-Passover foods after May 1, the date by which they were to be consumed.  Prison officials confiscated the foods, but Sister Raftery intervened on Kole's behalf, and the food was returned to her.

In 2006, the prison briefly instituted a spending limit on the kosher-for-Passover list at the request of the business office.  The Jewish inmates, including Kole, complained to Sister Raftery about this spending limit, and she convinced the prison authorities to remove the spending limit for 2006.  In 2007, the prison instituted a $100 spending limit and required that kosher-for-Passover foods be consumed within three

3

weeks.  Kole complained to Sister Raftery about this limit, and when that complaint was fruitless, she appealed her complaint to an assistant warden, and eventually to Warden Zickefoose.  As a result of her complaint, the limit on when the food had to be consumed was eliminated.

In 2008, the Warden, who ultimately makes decisions as to what items will be available for purchase by inmates, decided that kosher-for-Passover items would be made available through the Commissary rather than through Special Purchase Order. Warden Zickefoose, in consultation with Assistant Warden Rodriguez and the Commissary supervisor, chose five kosher-for-Passover items that they considered "best-sellers" to be available through the Commissary.  The five items on the 2008 Passover list are matzah, grape juice, macaroons, and bittersweet and milk chocolate. Assistant Warden Rodriguez testified that these particular items were chosen in an attempt to avoid the Commissary sustaining a loss on kosher-for-Passover items.  He also testified that there was a penological concern whenever a small group of inmates were given access to items other inmates were not, such as the items on the Passover list.  The concern was that such items would be hoarded or used for illegal barter between inmates.  In his short tenure at FCI Danbury, however, he had never heard of any kosher-for-Passover items being hoarded or bartered illegally in the prison.

When Kole complained to Sister Raftery about the limited number of items on the 2008 Passover list, Kole testified that Sister Raftery told her that, "When you start getting lawyers involved, that's what you get."  Sister Raftery denied making such a statement or having ever discussed this lawsuit with Kole.  The 2008 Passover list was created without consulting Sister Raftery.

4

Kole complains that the Warden removed all of the items from the 2008 Passover list that are high in protein, including all meat, fish or cheese.  As such, she will be hungry between meals because she cannot eat anything from  the main Commissary list because none of it is kosher for Passover.  Kole did not argue that the meals provided by the prison were insufficient to supply daily nutritional requirements, though she testified that they were insufficient to feel "comfortable."

The prison Commissary also offers a special "Holiday" Commissary list (the "Holiday list") available approximately between Thanksgiving and Christmas.  In 2007, the fourteen items on the list were holiday cookies, peanut brittle, chocolate covered cherries, thin mints, cheese, pizza kit, salmon, BBQ chicken, vanilla caramel coffee creamer, sugar-free french vanilla creamer, a make-up kit, "holiday" greeting cards, a "holiday" photo ticket, and "hand crafted all occasion cards."  The Holiday list is available to all inmates.  During the period the Holiday list is available, the prison's usual $290 spending limit is increased to $340.  Kole testified that she views the Holiday list as a "Christmas" list because that is the major holiday celebrated during December.  There was no testimony as to the shape of the "holiday" cookies or the style or substance of the greeting cards available on the Holiday list.  There are no Chanukah- or Kwanzaa-specific items on the Holiday list, nor are there any items that specifically mention a religious holiday.

## III.    CONCLUSIONS OF LAW

### A.    Kole's Complaint

As an initial matter, Kole's "Petition," filed on a form pursuant to 28 U.S.C. § 2241, challenges the "terms and conditions" of her incarceration and not the

lawfulness or term of her confinement.  See Complaint at 2.  Therefore, her civil rights

claims are not the proper subject of a habeas corpus petition.  See Hill v. McDonough,

547 U.S. 573, 578 (2006) ("Challenges to the lawfulness of confinement or to

particulars affecting its duration are the province of habeas corpus.")  The court will

construe Kole's Petition as a complaint requesting injunctive relief against the federal

officials in their official capacities for violation of her constitutional rights, pursuant to 5

U.S.C. § 702.

     B.    First Amendment Free Exercise Claim

     It is well settled that "convicted prisoners do not forfeit all constitutional

protections by reason of their conviction and confinement in prison."  O'Lone v. Estate

of Ahmad Uthman Shabazz, 482 U.S. 342, 348 (1987)(internal quotations

omitted)(internal citations omitted).  These protections clearly include those "afforded by

the First Amendment, including its directive that no law shall prohibit the free exercise of

religion."  Id. (internal citations omitted).  However, the exercise of such rights may be

limited "both from the fact of incarceration and from valid penological objectives --

including deterrence of crime, rehabilitation of prisoners, and institutional security."  Id.

(internal quotations omitted).

     Free exercise claims under the First Amendment proceed under the framework

set forth by the Supreme Court in Turner v. Safley, 482 U.S. 78, 89 (1987).[1]  See

_____

[1]The court notes that the framework for analyzing a free-exercise claim is different under the First Amendment than it is under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.  See Salahuddin v. Goord, 467 F.3d 263, 273-4 (2d Cir. 2006).  According to her counsel at the April 7, 2008 hearing, Kole only stated a claim under the First Amendment and not RLUIPA.  However, the court notes that, while the burden on the government is higher under RUILPA, the distinction does not matter here where the

Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006)(citing O'Lone v. Estate of

Shabazz, 482 U.S. 342, 107 (1987) (quoting Turner standard).  Under the First

Amendment, a prison policy that burdens the free exercise of religion passes

constitutional muster if "it is reasonably related to legitimate penological interests."  Id.

(quoting O'Lone, 482 U.S. at 349 (quoting Turner, 482 U.S. at 89 (1987)).  As a

threshold issue, a inmate must show that the disputed policy "substantially burdens

[her] sincerely held religious beliefs."  Id. (citing Ford v. McGinnis, 352 F.3d 582, 591

(2d Cir. 2003)).

The "substantial burden" requirement generally asks whether a restricted

religious practice is "considered central or important" to the plaintiff's religious practice.

 Ford, 352 F.3d at 593-4.  In this case, the parties do not dispute that Passover is a

highly important holiday in the Jewish faith and that maintaining special dietary

restrictions during Passover is essential to Kole's religious exercise as an observant

Jew who keeps kosher.  Such a belief is substantially burdened when a policy puts

"substantial pressure on an adherent to modify his behavior and to violate his beliefs."

Thomas v. Review Board, 450 U.S. 707, 718 (1981).  The court finds that, by reducing

the number of kosher-for-Passover foods available for purchase by inmates,

defendants have not substantially burdened Kole's religious exercise because the

change does not impinge on her ability to keep kosher-for-Passover.  See Kahane v.

Carlson, 527 F.2d 492, 495 (2d Cir. 1975).  In Kahane, the Second Circuit held that the

free exercise of religion includes the observance of dietary obligations.  Id.  As Kole

---

court finds that the challenged policy does not burden Kole's right to free religious exercise.

concedes, FCI Danbury provides her with two Seder dinners during Passover, and otherwise provides her with three kosher-for-Passover meals and a box of Matzoh each day during the eight days of the holiday.  While Kole testified that she gets hungry between meals and likes to supplement the prison's meals with food she has purchased at the Commissary, the court finds that the prison's provision of meals in accordance with Kole's religious dietary restrictions suffices to permit her free exercise of Judaism.  Further, while the variety of items offered is not as extensive as Kole may like, they do provide some supplement to the daily kosher-for-Passover meals defendants provide.  Kole has not shown that her freedom of religious exercise under the First Amendment has been burdened by the prison's limitation on the number of supplemental kosher-for-Passover foods available for purchase by inmates.

      C.     First Amendment Retaliation Claim

Kole alleges that the prison reduced the number of kosher-for-Passover food items available for inmates to purchase in retaliation for her filing a grievance regarding the one hundred dollar spending limit.  See Complaint, Claim Three at 7.  In order to sustain a First Amendment Retaliation claim, an inmate must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004).

Assuming arguendo that Kole can satisfy the first element, the court finds that Kole has not demonstrated a causal connection between the change in the prison's kosher-for-Passover food list and her filing a grievance.  Kole testified that Sister Raftery told her that the reduced Passover list was what Kole got "for getting lawyers

8

involved."  Sister Raftery testified that she never said anything to that effect, or ever discussed this lawsuit with Kole.

Even if the court were to credit Kole's testimony, Kole has not shown that Sister Raftery was in any way involved in deciding which kosher-for-Passover foods would be available.  To the contrary, Assistant Warden Rodriguez testified that, while he did not personally decide how many, or which, kosher-for-Passover items would be available for purchase from the Commissary, he was involved in conversations with the Warden and the Commissary supervisor in which the Warden decided which items would be offered.  According to Assistant Warden Rodriguez, the Warden chose the items on the current Passover list with the help of the Commissary supervisor because she wanted to pick items that would be "best sellers" and did not want the Commissary to realize a loss by ordering items inmates would not want.  Kole offered nothing to refute Rodriguez's account of the manner in which the items on the current Passover list were chosen, and the court credits Rodriguez's testimony.  Sister Raftery was not involved in the decision to offer fewer kosher-for-Passover items for purchase in 2008.  Therefore, Kole has not shown a causal connection between her filing a grievance and the shorter Passover list.[2]

       D.    Equal Protection Claim

Kole claims that the FCI Danbury's limited list of kosher-for-Passover foods for purchase violates her Fifth Amendment right to equal protection under the law because "other religions at FCI Danbury are accommodated by Commissary holiday items while

---

[2]The court notes that Kole did not press any other evidentiary basis for her retaliation claim.

we Jewish inmates are not."[3]  Complaint, Claim Two at 6.  Generally, an equal

protection complaint regarding a prison policy is evaluated under the Turner standard,

which asks whether the regulation was "reasonably related to legitimate penological

interests."  Johnson v. California, 543 U.S. 499, 510 (2005) (quoting Turner, 482 U.S. at

89);[4] see also Benjamin v. Coughlin, 905 F.2d 571, 575 (2d Cir. 1990) ("While the

Turner/Shabazz standard was established in the context of first amendment issues, it is

also relevant to the assessment of equal protection claims in the prison setting.").  In

weighing the reasonableness of a regulation under Turner, a court considers four

factors.  See Turner, 482 U.S. at 89-90.  First, "there must be a valid, rational

connection between the prison regulation and the legitimate governmental interest put

forward to justify it."  Id. at 89.  A second consideration is whether "there are alternative

means of exercising the right that remain open to prison inmates."  Id. at 90.  Third, a

court must consider "the impact accommodation of the asserted constitutional right will

have on guards and other inmates, and on the allocation of prison resources generally."

Id.  Finally, a court must consider "the absence of ready alternatives" or "the existence

---

[3]Kole asserts her equal protection claim under the Fourteenth Amendment to the Constitution.  Complaint, Claim Two at 6.  However, for claims against the federal government, the Supreme Court has read the requirement of equal protection under the law into the Due Process clause of the Fifth Amendment.  ERWIN CHEMERINSKY, CONSTITUTIONAL LAW 642 (2d ed.)(discussing Bolling v. Sharpe, 347 U.S. 497 (1954)).  Because the analysis is the same under the Fourteenth or Fifth Amendments, this error in Kole's complaint does not effect the analysis of her Equal Protection claim.  Id., citing Buckley v. Valeo, 424 U.S. 1, 93 (1976).

[4]The court in Johnson held that racial classifications are analyzed under strict scrutiny, rather than the relaxed standard of Turner, because the right not to be discriminated against by race is "not a right that need necessarily be compromised for the sake of proper prison administration."  Johnson, 543 U.S. at 510.  However, infringements on free religious exercise are clearly analyzed under the Turner standard.  See e.g. O'Lone, 482 U.S. 342 (holding prison could limit inmates' attendance at weekly religious ceremony under Turner).

of obvious, easy alternatives" which "may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  Id.

Normally, before determining whether the change in the number or type of kosher-for-Passover foods available is reasonably related to legitimate penological interests under Turner, the court must first determine whether the change implicates Kole's right to equal protection of the laws.  To prove a violation of equal protection, a plaintiff "must demonstrate that [she] was treated differently than others similarly situated as a result of the intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (holding inmate stated equal protection claim that he and other minorities were treated differently because of race).  Here, the Holiday list contains a variety of high-protein items including chicken, fish and cheese, that an inmate may use to supplement their normal diet; the Passover list does not similarly provide high-protein supplements to an inmate's kosher-for-Passover diet.  While this Holiday list is not  a "Christmas" list, the expanded Holiday list and raised spending limit do coincide with that religious holiday.  As such, the difference between the Holiday and the Passover lists may implicate Kole's right to equal protection because "the Equal Protection clause entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Shakur v. Schriro, 514 F.3d 878, 891 (quoting Cruz v. Beto, 405 U.S. 319, 322 (1972)(per curium))(internal quotation marks omitted).

However, the court need not decide whether the difference between the lists impinges on Kole's right to equal protection because the court finds that the differences between the two lists are "reasonably related to legitimate penological interests," and

11

therefore do not violate Kole's right to equal protection.  <u>Turner</u>, 482 U.S. at 89.
Through Assistant Warden Rodriguez's testimony, the government offered two
penological interests that support limiting the Passover list, but not the Holiday list.
First, Rodriguez testified that there is a general penological concern any time one group
of inmates has access to something that other inmates do not because those items
may be hoarded and used to barter illicitly.  Second, Rodriguez testified that the items
were chosen based on which were believed to be "best sellers" so that the Commissary
would not operate at a loss on kosher-for-Passover items.

        Under the first <u>Turner</u> factor, there is clearly a "valid, rational connection"
between limiting the number of items on the Passover list and both the desire to avoid
giving some inmates special access to goods and the desire not to run the Commissary
at a loss.  <u>Id.</u>  Both of these penological concerns serve to explain why the prison
authorities have different interests in limiting the items on the Passover list, but not
those on the Holiday list.  First, for one week, only Jewish inmates have access to the
items on the Passover list, while the items on the Holiday list are available to everyone
at the same time.  Therefore the government's goal of limiting "special access" to items
by small groups of inmates is implicated by the Passover list, but not the Holiday list.

        Second, the Passover list contains only specialty kosher-for-Passover foods.
There are relatively few Jews at FCI Danbury.  Therefore, the penological concern that
the Commissary may run at a deficit if certain foods proved unpopular is more a
concern for the Passover list than the Holiday list.[5]   While the government did not put

_____

        [5]It bears noting in this regard that 2008 is the first year kosher-for-Passover items are
available through the Commissary rather than Special Purchase Order.

forth any evidence that kosher-for-Passover items have been hoarded or used for illicit bartering,  the Turner analysis does not require that the prison authorities' concerns be realized before a restriction is justified -- only that such a restriction not be "arbitrary or irrational." Id.  Furthermore, "once prison officials put forward a legitimate penological interest to justify an infringement upon a prisoner's [rights], the burden remains with the prisoner to show that these penological concerns were irrational." Ford v. McGinnis, 352 F.3d 582, 595-6 (2d Cir. 2003) (internal quotations omitted).

Under the third Turner factor,[6] the court considers the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. at 90.  Both Sister Raftery and Rodriguez testified that they did not believe changing individual items on the current Passover list, for example, substituting chicken soup with matzah balls for macaroons, would have any impact on the orderly administration of FCI Danbury.  However, accommodating Kole would require adding additional items to the Passover list so that it was equivalent in number and type of items to the Holiday list.  Adding additional items would implicate both of the penological concerns raised by Rodriguez: illicit bartering and the Commissary's ability to recoup on inventory.  This court heeds the Supreme Court's warning that, "[w]hen accommodation of an asserted right will have a significant 'ripple

---

[6]The second factor in the Turner analysis is "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90.  While this factor makes sense in light of the first amendment question the Turner Court analyzed, it is unclear to this court how an "alternative means" of exercising an inmate's right to equal protection could exist.  But see Dehart v. Horn, 227 F.3d 47, 61n.11 (3d Cir. 2000) (considering whether regulation "leaves open other avenues for religious exercise" in considering equal protection claim).  Therefore, the court finds that there is no alternative means by which Kole could exercise her right to Equal Protection.

effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." Id. The defendants' asserted penological reasons sufficiently demonstrate that adding additional items to the Passover list may have a "ripple effect" on orderly prison administration and the Commissary's budget.

Finally, under Turner, the court considers "the absence of ready alternatives" or the "existence of obvious, easy alternatives." Id. In this instance, the alternative of offering more items on the Passover list, and offering higher-calorie higher-protein items similar to those offered on the Holiday list, would be a relatively easy alternative to remedy Kole's complaint. The Supreme Court suggests that the existence of such an obvious, easy alternative may be evidence that "the regulation is not reasonable, but is an exaggerated response to prison concerns." Id. Given the absence of evidence that kosher-for-Passover foods have ever been used in illicit sales or that the Commissary has run at a deficit, it seems possible that the limited Passover list is an exaggerated response to the prison officials' penological concerns. However, such a conclusion is only warranted where the easy alternative would come at "de minimis cost to valid penological interests." Id. at 91. The court finds that Kole has not put forth evidence for the court to determine that the costs to the government's penological interests would be de minimis. Therefore, the court is inclined to find that this factor weighs in favor of finding the limited Passover list reasonable, though the court acknowledges that that conclusion is based on a limited record.

Looking at these factors together, the court concludes that the defendants' choice to offer fewer and different items on the Passover Commissary list, than they do

14

on the Holiday list, is a reasonable one.  The government's stated penological interests in limiting a small group of inmate's access to special goods to avoid hoarding and illegal trade, and in the efficient financial operation of the prison Commissary, are "logically advanced" by offering a smaller number of "best sellers" for sale on Passover. Id. at 93.  While there is no evidence before the court that such illegal trade or Commissary deficits have actually occurred in the past, there is likewise no reason for the court to believe that offering more items on the Passover list would have de minimis effect on these rational penological interests.  Therefore, mindful of the Supreme Court's admonition that courts should not "substitute our judgment on difficult and sensitive matters of institutional administration for the determinations of those charged with the formidable task of running a prison," the court finds that the difference between the Passover and the "Holiday" lists does not violate Kole's right to Equal Protection. O'Lone, 482 U.S. at 353 (quoting Block v. Rutherford, 468 U.S. 576, 588 (1984) (internal quotation marks omitted)).

       D.    Substantive Due Process

      Under the Due Process Clause of the Fifth Amendment to the Constitution, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V.  This clause, which has been interpreted as a "protection of the individual against arbitrary action of the government," has procedural and substantive components.  Lombardi v. Whitman, 485 F.3d 73, 78 (2d Cir. 2007)(quoting County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)).  The substantive component protects the individual against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective."  Id. (quoting Lewis, 523 U.S. at 846).  In

order to establish a violation of a right to substantive due process, a plaintiff must demonstrate that a government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)(quoting Lewis, 523 U.S. at 847). In the prison context, "deliberate indifference" is enough to shock the conscience because of "the luxury enjoyed by prison officials in having time to make unhurried judgments, upon the chance for repeated reflection." Id. at 113 (quoting Lewis, 523 U.S. at 851). The court finds that Kole has not shown that the change in the Passover list constituted "deliberate indifference" to her rights such that changing the list constituted a violation of her right to Substantive Due Process under the Fifth Amendment.

## IV.   CONCLUSION

Based on the preceding findings of fact and conclusions of law, the court orders that judgment enter in favor of the defendants on all Counts of the Complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of April, 2008.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge

16